**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **H'S BAR, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 20-cv-1134-SMY |
| ) | |
| **CYNTHIA BERG, MARCUS D.** ) | |
| **FRUCHTER, BRENDAN KELLY, SAINT** ) | |
| **CLAIR COUNTY SHERIFF'S** ) | |
| **DEPARTMENT, and SAINT CLAIR** ) | |
| **COUNTY HEALTH DEPARTMENT,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In response to the ongoing COVID-19 pandemic, Illinois Governor JB Pritzker has issued a series of executive orders aimed at curbing the spread of the virus and protecting the health of Illinois residents. The latest, Executive Order 63 ("EO63"), includes a prohibition against indoor service at restaurants and bars, including those in St. Clair County where H's Bar is located.

On October 28, 2020, Plaintiff H's Bar, LLC filed the instant action against Defendants Cynthia Berg (Chairman of the Illinois Liquor Control Commission), Marcus Fruchter (Administrator of the Illinois Gaming Board), Brendan Kelly (Director of Illinois State Police), the Saint Clair County Sheriff's Department, and the Saint Clair County Health Department, asserting the following claims: Defendants' enforcement actions violate the right of people to peaceably assemble under the First and Fourteenth amendments (Count I); the Governor lacked authority to issue EO63 and lacks authority to issue future COVID-19 related executive orders (Count II); and the Governor lacks power to issue emergency orders and is therefore violating

Plaintiff's due process rights under the Fourth and Fourteenth amendments (Count III).[1]  Plaintiff requests that this Court enjoin Defendants from enforcing EO63 and any future executive order issued by the Governor against it or its customers.  Plaintiff further requests that the Court declare as null, void, and of no legal effect, any COVID-19 related executive order issued by the Governor that would require it to shut down or deny indoor service to its customers (Doc. 1).

The case is now before the Court for consideration of Plaintiff's request for the issuance of a preliminary injunction (Doc. 15).[2]  The Court conducted a hearing on the motion on November 13, 2020.  For the following reasons, Plaintiff's Motion for Preliminary Injunction is **DENIED**.

## Background

COVID-19 is the disease caused by the novel coronavirus SARS-CoV-2, for which there is no known cure or available vaccine at this time.  To date, COVID-19 has infected over 11.5 million and killed nearly 250,000 people in the United States.[3]  In Illinois, more than 606,771 residents have tested positive and more than 11,000 have died.[4]  On November 15, 2020, Southwestern Illinois (where Plaintiff is located) reported 659 new cases of the virus.

The virus is transmitted mainly from person to person through contact, respiratory droplets, and aerosols.  Airborne transmission of the virus, in which infection spreads through exposure to small droplets and particles that can remain suspended in the air for hours, is more likely to occur in enclosed spaces and with prolonged exposure.  To slow the spread of COVID-19, the Centers

---

[1] The Fourth Amendment protects people from unreasonable searches and seizure and does not afford due process rights. *See* U.S. Const. amend. IV.  Thus, Plaintiff's purported Fourth Amendment due process claim fails as a matter of law.
[2] Plaintiff also moved for a temporary restraining order (Doc. 15).  That request was previously denied (Doc. 18).
[3] *See Coronavirus Disease 2019 (COVID-19): Cases in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited November 19, 2020).
[4] *See Coronavirus Disease 2019 (COVID-19) in Illinois*, Ill. Dep't of Pub. Health, http://www.dph.illinois.gov/covid19 (last visited November 19, 2020).

for Disease Control and Prevention ("CDC") recommends mask wearing and social distancing (keeping six feet away from others indoors and outdoors and limiting contact with those outside your household). According to the CDC, dining and drinking at restaurants and bars is closely linked to the spread of the virus.[5]

State and local governments across the country have enacted measures designed to reduce the spread of this highly contagious, easily transferable, and potentially lethal virus. In March 2020, invoking his authority under the Illinois Emergency Management Agency Act, 20 ILCS 3305/1 *et seq.* ("IEMAA")[6] and the Illinois Constitution, Governor Pritzker issued a proclamation declaring the COVID-19 pandemic a disaster in Illinois and issued an executive order to slow the spread of the virus and to enhance the availability of testing and treatment. Because the pandemic persisted, the Governor issued subsequent disaster proclamations and executive orders on April 1, April 30, May 29, June 26, July 24, August 21, September 18, and October 16, and October 27, 2020 (Doc. 15-1 at 25-39; Doc. 15-2 at 1-37).

EO63, issued on October 27, 2020 and the subject of Plaintiff's challenge, imposed additional restrictions on several counties, including St. Clair County, due to high positivity rates—*i.e.*, the rate of infections in those counties exceeded 8% for 3 consecutive days (on a 7-day rolling average) (Doc. 15-2 at 34-37). Section 1(a) of EO63 requires restaurants and bars in St.

---

[5] Centers for Disease Control and Prevention, Community and Close Contact Exposures Associated with COVID-19 Among Symptomatic Adults ≥18 Years in 11 Outpatient Health Care Facilities—United States, July 2020 (Sept. 11, 2020), https://bit.ly/37OOUbO.

[6] The IEMAA was enacted to "ensure that this State will be prepared to and will adequately deal with any disasters" and "protect the public peace, health, and safety in the event of a disaster." 20 ILCS 3305/2(a) (West 2020). It defines "disaster" as "an occurrence or threat of widespread or severe damage, injury or loss of life or property resulting from any natural or technological cause," including an "epidemic" and "public health emergencies." *Id.* 3305/4 (West 2020). Under section 7 of IEMAA, the Governor may proclaim that such a disaster exists and then exercise his emergency powers for a period of 30 days. *Id.* 3305/7. IEMAA does not limit the number of proclamations the Governor may issue for a single, or ongoing disaster.

Clair County to cease indoor dining as of October 28, 2020 until the "positivity rate averages . . . 6.5 percent [or less] over a 3-day period." Sections 1(b)-(d) of EO63 place additional restrictions on other indoor gatherings at meetings, social events, casinos, and other gaming venues.

## Discussion

To obtain a preliminary injunction, a movant must establish (1) that it has a likelihood of success on the merits of its claims, (2) that it has no adequate remedy at law, and (3) that it will suffer irreparable harm if the requested relief is not granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the plaintiff meets this three-element threshold, the court then "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id*. The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *GEFT Outdoors*, 992 F.3d at 364. The court must also consider the interests of non-parties in granting or denying the requested relief. *Ty, Inc., v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

### Standing

Consistent with its obligation to ensure that it has subject matter jurisdiction over this litigation, before addressing the requirements for preliminary injunctive relief, the Court must first address Defendants' contention that Plaintiff lacks constitutional standing to bring the claims in this lawsuit. Article III of the Constitution limits federal judicial authority to "Cases" and "Controversies." U.S. Const. art. III, § 2. Thus, to have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, —– U.S. ––––, 136 S. Ct. 1540, 1547(2016).

In the Complaint, Plaintiff alleges that EO63 violates its First Amendment rights by prohibiting or punishing it from "operating a location from which peaceful persons may peaceably assemble or gather at which location they can and do discuss the issues of the day" (Doc. 1, p.5). Through this allegation, Plaintiff attempts to invoke First Amendment protections as a *location* where others may exercise their First Amendment rights. But an aggrieved party must assert its own legal rights and interests and cannot rest its claim to relief on the legal rights or interests of third parties. *See, Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996).

Plaintiff points to its allegation in the Complaint that "Earlier this week, J.B. Pritzger [sic], once again, issued another lockdown order, that, if followed, will shut down H's immediately, if not blocked, causing actual and substantial damage to Plaintiff's ability to exist, and the ability of Plaintiff, and its owners, employees to make a living and peacefully assemble and discuss the issues of the day, as well as the customers of Plaintiff to peacefully assemble and discuss the issues of the day" (Doc. 1, p.2, ¶ 8) and argues that it has independent standing because EO63 infringes on its right to associate with its patrons and employees. While the First Amendment does not generally protect a "right of association", a constitutionally protected right of association has been recognized where association is "for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion. *Roberts v. United States Jaycees,* 468 U.S. 609, 618 (1984). At this juncture, the Court cannot conclude that the Complaint allegations are insufficient to survive Defendants' facial challenge to standing or that it lacks subject matter jurisdiction as to the claims asserted.

**Preliminary Injunction**

The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are usually in the public interest. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Consequently, the likelihood of success on the merits "is usually the decisive factor" in First Amendment cases in which injunctive relief is sought. *Wis. Right To Life, Inc. v. Barland*, 751 F.3d 804, 830 (7th Cir. 2014). That is true here.

The Seventh Circuit recently clarified the "likelihood of success" standard in *Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020). The Court explained that a "possibility of success is not enough" and "[n]either is a better than negligible chance." *Id.* at 762. (internal citations and quotations omitted). But, the moving party "need not show that it definitely will win the case." *Id.* at 763. "A strong showing" of a likelihood of success on the merits thus "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* (internal citations and quotations omitted). Accordingly, the question before the Court is whether Plaintiff has made a strong showing of likelihood of success on the merits of the claims asserted in the Complaint.

*Government Authority During Public Health Crises*

Restrictions on federal constitutional rights during public health emergencies, such as the current global pandemic, are examined under the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). Considering a Massachusetts mandatory-vaccination statute enacted to combat a smallpox epidemic, the Court rejected the plaintiff's Fourteenth Amendment claim that the law violated his right to personal autonomy. *Jacobson*, 197 U.S. at 29. In doing so, the Court defined the expanse of the state police power, holding that "the rights of the individual

in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." *Id*. at 29.  This police power encompasses such authority reasonably necessary to "guard and protect" public health and public safety, including protecting communities "against an epidemic of disease which threatens the safety of its members." *Id*. at 27, 38.

While Plaintiff downplays the seriousness of COVID-19 without substantiation – questioning the number of people that have died and equating the virus to the common cold – science and verifiable data inform the Court's analysis.  In the United States alone, the virus has infected over 11.5 million and claimed the lives of more than 250,000 people.  There is no doubt that this country… and in fact the world is in the midst of the deadliest pandemic in modern history.  As a result, relying on *Jacobson*, courts across the country have consistently declined to enjoin state and local restrictions aimed at protecting the public against the spread of COVID-19.  *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (reaffirming the broad power of states to enact measure to protect the public health from COVID-19); *Illinois Republican Party v. J.B. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ("At least at this stage of the pandemic, *Jacobson* takes off the table any general challenge to [Governor Pritzker's executive order] based on the Fourteenth Amendment's protection of liberty."); *Elim Romanian Pentecostal Church*, 962 F.3d 341 (7th Cir. 2020).  This Court joins them.

EO63's prohibitions are based on scientific and medical data establishing that dining in restaurants and bars is closely linked to the spread of the virus.  For example, a recent survey released by the Governor's Office shows that restaurants and bars are second only to "other" in terms of possible sources of exposure for all cases reported.  EO63's requirement that restaurants and bars cease indoor service until the positivity rate declines has a real and substantial relationship

to preventing the spread of COVID-19.  As such, this Court concludes that the claimed deprivation of Plaintiff's federal constitutional rights would be permissible under *Jacobson*, and therefore, the likelihood that Plaintiff will succeed on the merits of those claims is negligible at best.

Even if the deferential *Jacobson* standard did not apply, Plaintiff's First Amendment claims are unlikely to succeed under traditional First Amendment analysis as there is no constitutional right to social associations.  *See Stanglin,* 490 U.S. at 25 (dance-hall patrons' gathering to engage in recreational dancing is not constitutionally protected even though "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—[as] such a kernel is not sufficient to bring the activity within the protection of the First Amendment").  As the Seventh Circuit noted in *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir. 1990), *cert. denied*, 498 U.S. 853 (1990):

> Casual chit-chat between two persons or confined to a small social group is unrelated, or largely so, to [the marketplace of ideas], and is not protected.  Such conversation is important to its participants but not to the advancement of knowledge, the transformation of taste, political change, cultural expression, and the other objectives, values, and consequences of the speech that is protected by the First Amendment.

*See also, Michaelidis v. Berry*, 502 F. App'x 94, 96-97 (2d Cir. 2012) (holding that relationships between plaintiffs and "their restaurant customers, and their employees are not sufficiently intimate to implicate [First Amendment] protection").  It is improbable then that Plaintiff has a protected First Amendment right to associate with its patrons while they drink and discuss "the issues of the day".

Moreover, the First Amendment's guarantee of free speech is not absolute.  Even in the absence of a public health crisis, the government can "enforce reasonable time, place, and manner regulations" in public spaces "as long as the restrictions are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of

communication." *United States v. Grace*, 461 U.S. 171, 177 (1983) (citation omitted). EO63, like the Governor's previous executive orders, is content-neutral; it broadly prohibits indoor dining without regard for the content of the expression that occurs while individuals are eating and/or drinking. It is also narrowly tailored to promote a substantial government interest in mitigating the spread of the virus.

For these reasons, the Court concludes that Plaintiff has a negligible likelihood of success on the merits on his First Amendment claim both under *Jacobson* and traditional constitutional analysis.[7]

### *State Law Claim*

Plaintiff alleges that EO63 is an overreach of the Governor's authority under IEMMA and therefore, the executive order (and any future order) is void. Defendants contend that this claim is barred by the Eleventh Amendment, which prohibits private lawsuits against a state or state agency without the state's unambiguous consent or an act of Congress. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *Nunez v. Indiana Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016). Plaintiff offers no explanation as to why the Eleventh Amendment would not bar this claim. Without such a showing, Plaintiff has failed to demonstrate the requisite likelihood of success on the merits as to this claim.

Even absent Eleventh Amendment immunity, this Court finds that there is no likelihood Plaintiff will ultimately succeed on this claim on the merits. Section 7 of IEMAA grants the Governor the authority to declare that a "disaster exists" in certain circumstances, including during a public health emergency or epidemic. 20 ILCS 3305/7. If the Governor then issues a

---

[7] Plaintiff asserts a due process violation in Count III of its Complaint but does not address the claim in its motion seeking injunctive relief. As such, Plaintiff has not satisfied its burden to demonstrate likelihood of success on the merits with respect to its due process claim.

disaster proclamation, he may exercise "emergency powers" for 30 days thereafter. *Id.* Section 7 contains no limitation on the number of proclamations the Governor may issue to address an ongoing disaster. Thus, the plain language of IEMAA permits the Governor to issue multiple and successive disaster proclamations and to exercise emergency powers for additional 30-day periods, so long as a disaster continues to exist.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction (Doc. 15) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: November 21, 2020**

**STACI M. YANDLE**
**United States District Judge**